IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ONG VUE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 21-CV-265-GKF-SH |
| | ) | |
| JANET DOWLING, Warden, | ) | |
| AARON PERUSKIE, Chief of Security | ) | |
| RANDY HARDING, Deputy Warden, | ) | |
| CREIGHTON WHITE, Deputy Warden, | ) | |
| ALEX ARMSTRONG, Chief of Security, | ) | |
| BRADLEY ROGERS, DCCC STI Agent, | ) | |
| and MICHAEL WILLIAMS, | ) | |
| Intelligence Officer, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Plaintiff Ong Vue, a state inmate appearing pro se, brings this action, under 42 U.S.C. § 1983, to vindicate alleged violations of his Fourteenth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment. In his Amended Complaint (Dkt. 23), Vue identifies two claims against seven defendants, suing each in his or her official and individual capacities, and seeks declaratory and injunctive relief. This matter comes before the Court on Defendants Janet Dowling and Aaron Peruskie's Motion to Dismiss (Dkt. 27) the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and sua sponte under the screening provision of 28 U.S.C. § 1915(e)(2)(B). Vue filed a response (Dkt. 28) in opposition to Dowling and Peruskie's Motion to Dismiss. For the following reasons, the Court grants the Motion to Dismiss, dismisses the Amended Complaint, and declares moot Vue's Motion to Stay (Dkt. 26).

## BACKGROUND

Vue, who is incarcerated at the Dick Conner Correctional Center (DCCC), in Hominy, Oklahoma, seeks relief from Defendants' alleged actions of wrongly classifying him as a member or associate of the "Sureños" gang and placing him in administrative segregation with members of that gang. (Dkt. 23, generally). Vue's original Complaint (Dkt. 1), filed in June 2021, named only two defendants, Janet Dowling, the DCCC's Warden, and Aaron Peruskie, the DCCC's Chief of Security. Vue subsequently filed an Amended Complaint (Dkt. 23), alleging that he was assaulted by other inmates while housed in administrative segregation and including five additional defendants who have not yet been served. The following facts are drawn from the Amended Complaint and from portions of the Special Report (Dkt. 16) Vue refers to in the Amended Complaint.

On August 28, 2020, Vue's prison cell, Unit Q, cell 107, was designated a security threat group (STG), and Vue was administratively segregated from the general prison population. (Dkt. 23 at 5). On September 1, 2020, Vue learned that he was segregated with the Sureños, a Hispanic gang, because prison officials found a handwritten roster identifying Vue as a member or associate of the Sureños. *Id*. Vue told an officer that same day he was not affiliated with the Sureños, but the officer told Vue he needed to submit a Request to Staff (RTS) to have his classification reviewed. *Id*. The following day, Vue submitted a RTS to Security claiming he is not a member of the Sureños gang and never could be a member of the Hispanic gang because he is of Asian descent, specifically of the Hmong ethnic group. (Dkt. 23 at 5, 24).

After receiving no response to his September RTS and remaining in administrative segregation with the Sureños, Vue submitted a RTS to the Chief of Security on October 26, 2020, again stating that he is not affiliated with the Sureños. (Dkt. 23 at 5; Dkt. 16-11, at 9-10). In

2

response, Defendant Aaron Peruskie, the Chief of Security, stated, "I have asked the Security Threat Intelligence [STI] Unit to come to DCCC and revalidate. Relief pending upon results of STI interviews." (Dkt. 16-11 at 10; Dkt 23 at 6).

In October 2020, Vue was attacked by Sureños gang members from Unit Q, cell 104, wielding knives. (Dkt. 23 at 6). The unit officer intervened and prevented Vue from being injured. *Id*. After the incident, Vue heard several officers laughing and joking about the incident, leading Vue to believe his classification and segregation were intentional and retaliatory. *Id*. After the attack, Vue was returned to his cell in segregated housing with the Sureños. *Id*. at 7.

In December 2020, Security informed Vue that he would be moved to Unit K because Defendant Janet Dowling was designating Unit K as segregated housing for Sureños gang members. (Dkt. 23 at 7). Vue again informed the unit officer that he was not a Sureños gang member. *Id*. During the same month, one of Vue's cellmates who, according to Vue, is Hispanic, was removed from the STG list and placed in general population simply because he told staff he was not affiliated with the Sureños. *Id*. On December 28, 2020, Vue submitted a RTS to Dowling, again stating he was not a Sureños gang member. (Dkt. 23 at 7; Dkt. 16-11 at 6-8). On January 4, 2021, Dowling responded, "[t]he STG list is compiled and maintained by the Office of Inspector General. I will ask the [STI] Unit to come to DCCC and revalidate. Relief pending upon result of STI interviews." (Dkt. 16-11 at 8; Dkt. 23 at 7). From January 4, 2021 to April 15, 2021, no one from the STI Unit interviewed Vue, and he remained in administrative segregation. (Dkt. 23 at 8).

On April 15, 2021, Vue submitted a RTS to Dowling, again stating he is not a member of the Sureños gang and requesting an interview by the STI Unit. (Dkt. 23 at 8; Dkt. 16-11 at 4). Dowling again responded, noting she had "addressed" this request in the January 4, 2021 response,

3

and otherwise repeating that response, verbatim. (Dkt. 16-11 at 5). From April 15, 2021 to June 18, 2021, no one from the STI Unit interviewed Vue. (Dkt. 23 at 9).

On June 18, 2021, Defendant Bradley Rogers, the DCCC's STI Agent, informed Vue that, based on information in Vue's file, Vue had two points under the STI system, qualifying him as an "associate" of the Sureños. (Dkt. 23 at 9). Rogers stated he would interview Vue on June 21, 2021, but Rogers did not conduct the interview. *Id*.

On June 24, 2021, Vue submitted a RTS to "STI DCCC, OIG Advocate," requesting the promised interview, removal of the STG label, and his removal from administrative segregation. (Dkt. 23 at 9; Dkt.16-11 at 3). After more than 30 days with no response, Vue submitted a grievance on July 29, 2021, requesting a response to the June RTS. (Dkt. 23 at 9; Dkt. 16-8 at 3). On August 10, 2021, Dowling "'granted relief' by directing the facility assigned STI officer, Agent Bradley Rogers to respon[d] to [Vue's] June 24, 2021 RTS." (Dkt. 23 at 9; Dkt. 16-8 at 2).

Rogers did not timely respond and, on September 23, 2021, Vue submitted another RTS requesting a response to his June 24, 2021 RTS from Rogers. (Dkt. 23 at 9). Rogers responded on October 7, 2021, stating

> You will be placed on the "inactive" list but your 2 points will remain, as you [were] on a "Roster" with Surenos affiliation. You're labeled as an "associate" and not a member. If facility heads believe your [sic] not a threat or in threat[,] they're able to take you off admin seg.

(Dkt. 16-11 at 3; Dkt. 23 at 10). From this response, "it became clear" to Vue "that the facility heads [were] responsible for [his] placement in Administrative Segregation even though [he] was not 'Hispanic.'" (Dkt. 23 at 10).

On the same day he received Rogers's response, Vue submitted a RTS to Rogers requesting the "reliable documented information" that caused the STI Unit to identify him as an associate of the Sureños "per OP-040119.111." (Dkt. 23 at 10, Dkt. 16-11 at 2). Rogers responded that, due

4

to security concerns, he could not provide Vue "with a copy of the Sureños 'Roster' that was confiscated," and stated, "Your name, DOC #, Alias was on the roster, with other validated Sureños STG." (Dkt. 16-11 at 2; Dkt. 23 at 10). Vue submitted two more RTSs to Dowling in October 2021, but Dowling responded that an RTS may not be submitted about matters that are in the course of litigation. (Dkt. 23 at 10, 28).

The Oklahoma Department of Corrections (ODOC) has a written policy on Intelligence (OP-040119) that states its mission is to "collect, assess and analyze information . . . to ensure the safety and security of all employees, visitors and inmates." (Dkt. 16-3 at 2). When an officer receives information regarding criminal activity, he or she is required to report this information on an STG validation form. *Id*. at 4, 7. The information to be reported consists of contraband, known aliases, suspicious financial activity, threats, associations with gangs, recruitment of guards, and suspicious inmate-to-inmate notes or mail, among others. *Id*. at 4-6. Once collected and submitted, the Oklahoma Inspector General (OIG) Security Threats Intelligence (STI) division uses this information to create STGs and identify its members, suspected members and associates. *Id*. at 7. Once information is received, an OIG intelligence agent evaluates the information, and if the information is reliable and documented or a history of gang or terrorist activity exists, the agent will complete and submit to STI a STG validation form. *Id*.

The STG validation form uses points, based on reliable information, to determine whether an inmate is a validated member, suspected member or associate. (Dkt. 16-4 at 2). For example, if an inmate appears on a document/publication, such as a "roster," the inmate may receive five points. *Id*. If an inmate receives two points, he is considered an associate of an STG. *Id*. If an inmate receives three points, he is considered a suspected member of an STG. *Id*. And if an inmate receives ten points, he is considered a validated member of an STG. *Id*. In the instant case, Vue's

5

name was listed on a handwritten roster confiscated by prison officials, and Defendant Michael Williams submitted a STG validation form, with the roster, assessing Vue with two points. (Dkt. 16-5 at 3-5; Dkt. 23 at 9). This caused Vue to be labeled an associate according to the point scale on the STG validation form. *Id*.

Vue generally contends that each defendant had some role in misclassifying him as a member of the Sureños, resulting in his administrative segregation, and that each defendant failed to comply with the ODOC's policies and procedures. As to each specific defendant, Vue contends Dowling improperly segregated him with the Sureños. (Dkt. 23 at 11). He states that while it is the OIG who compiles and maintains the STG validation list, it was Dowling who gave the directive to segregate him, including moving him with the Sureños to a new Unit after he was attacked. *Id*. Vue asserts that Defendant Randy Harding, the Deputy Warden, also improperly segregated Vue, because Harding "was aware of the fact that [Vue] was not a member or even suspected member prior to [his] move to Unit K . . .." *Id*. at 12-13. Vue asserts it was Peruskie who "is responsible for classifying Vue as an 'associate,'" because Peruskie is responsible for compliance with the intelligence operating procedure. *Id*. at 12. Vue further contends Peruskie was not properly trained on the operating procedures and had "direct" knowledge that Vue was not a validated or suspected member of the Sureños. *Id*. As to Rogers, Vue asserts he failed to follow ODOC operating procedures and failed to perform his duties by not timely interviewing Vue. *Id*. at 13.

Vue asserts Williams, an intelligence officer, "blatantly ignored the [operating procedures] when he personally completed, certified and entered into the STG Database Vue's Validation Form." (Dkt. 23 at 14). Vue contends the information Williams submitted was unreliable, as it showed housing arrangements, rather than gang affiliation, and it was Peruskie's duty, not

6

Williams's duty, to submit STG validation forms. *Id*. Defendant Alex Armstrong replaced Peruskie as Chief of Security, and Defendant Creighton White replaced Harding as Deputy Warden, sometime after Vue was placed in administrative segregation. *Id*. at 13. Vue alleges however, that each of these two defendants continued his predecessor's allegedly improper conduct. *Id*. at 13-14.

Vue makes two claims. First, Vue claims Defendants' alleged conduct violated his Fourteenth Amendment right to due process because their "practices are in violation of state statute and departmental policy, thereby depriving [Vue] of a state-created liberty interest and subjecting [Vue] to disparate and discriminatory treatment." (Dkt. 23 at 5). Second, Vue asserts Defendants' conduct violated his Eighth Amendment right of protection from cruel and unusual punishment because "departmental policy does not establish a procedure to challenge 'association' classifications" or to remove inaccurate STG designations that could, and in this case did, place an inmate's life in danger. *Id*. at 14.

Vue asks this Court to declare that Defendants' practices are in violation of departmental procedures, that Defendants have operated and continue to operate a scheme of administrative segregation that violates the Eighth and Fourteenth Amendments, and that Defendants' lack of procedural safeguards allowed Vue to be subjected to physical harm as a result of that continual practice. (Dkt. 23 at 19). Vue also asks this Court to enjoin Defendants to discontinue these disparate and discriminatory practices. *Id*.

Defendants Dowling and Peruskie (collectively, Movants) seek dismissal of the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Movants assert that:

(1) There is no violation of due process because no liberty interest exists in gang classification;

(2) Movants did not personally participate in any constitutional violation, and thus must be dismissed;

(3) Movants did not promulgate the Oklahoma Department of Corrections' policies, and thus cannot be held liable for policy deficiencies; and

(4) The issues are now moot, as Vue has received the relief sought, by being labeled "inactive," and "undesignating him as being a member of a prison gang."

(Dkt. 27).

## DISCUSSION

### I. STANDARD OF REVIEW

Under the Prison Litigation Reform Act (PLRA), federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a government entity or officer. *See* 28 U.S.C. § 1915A(a). The Court must identify any cognizable claim and dismiss any claim which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). To avoid dismissal for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief about the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A court must accept all the well-pleaded allegations of the complaint as true and must construe the allegations in the light most favorable to the plaintiff. *Id.* at 555. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. *Id.* at 558. *Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

A pro se plaintiff's complaint must be broadly construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id.* However, the Court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quotations and citations omitted). Nor will the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

The Court applies the same standard of review for dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii) that is employed for Fed. R. Civ. P. 12(b)(6) motions to dismiss for failure to state a claim. *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). As such, the Court will address the Motion to Dismiss (Dkt. 27) and engage in a preliminary screening of the Amended Complaint for the claims asserted against the remaining, unserved defendants.

## II.    DUE PROCESS CLAIM

In his first claim, Vue alleges "state officials violated [his] Fourteenth Amendment right to due process of law because Defendants' practices are in violation of state statute and departmental

policy, thereby depriving [Vue] of a state-created liberty interest and subjecting [Vue] to disparate and discriminatory treatment." (Dkt. 23 at 5). To survive a motion to dismiss, Vue must plausibly allege the "(1) deprivation of a federally protected right (2) by an actor acting under color of state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). Movants contend that Vue has failed to state a claim because the Fourteenth Amendment does not grant a liberty interest in gang classifications or housing assignments. Thus, Movants argue that Vue has failed to show the first element, the deprivation of a federally protected right.

The Fourteenth Amendment requires due process only if the defendant affected a liberty or property interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Courts have routinely held that a prisoner does not possess a liberty interest in a particular classification. *See Sparks v. Foster*, 241 F. App'x 467, 471 (10th Cir. 2007) (unpublished).[1] The United States Court of Appeals for the Tenth Circuit has held that an incorrect classification does not give rise to a due process violation. *See Muniz v. Moore*, 375 F. App'x 841, 844 (10th Cir. 2010) (unpublished) ("[Plaintiff's] incorrect classification claim fails because due process generally does not give prisoners rights to particular classifications."). Nor do prisoners have a liberty interest in particular housing assignments within the prison or in remaining in the general population. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) ("We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); *see also Est. of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1345 (10th Cir. 2007); *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).

---

[1] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

However, a liberty interest may arise from state regulations only when they extend the duration of confinement or impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487 (1995). To determine whether the conditions are atypical and significant, the court engages in a fact-intensive assessment, considering the totality of the circumstances. *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012). The Tenth Circuit, in *DiMarco*, considered four factors:

1. The existence of a legitimate penological interest,
2. The extremity of the conditions,
3. The possible effect on the duration of confinement, and
4. The indeterminate nature of the placement.

*Est. of DiMarco*, 473 F.3d at 1342. This list is instructive and not exhaustive, as other potentially relevant factors may apply. *Rezaq*, 677 F.3d at 1012-13.

In *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005), the United States Supreme Court found conditions of indefinite, solitary confinement to create a liberty interest because the conditions were atypical, indefinite, and disqualified an otherwise eligible inmate for parole. These extreme conditions—indefinite solitary confinement that rendered the prisoner ineligible for parole—are not present here. *See id.* at 224.

Rather, Vue's case is analogous to *Sparks*, 241 F. App'x at 471. In *Sparks*, the prisoner claimed to be incorrectly labeled a gang member. *Id*. at 468. With this label, prison guards "forced" the prisoner to cross strike lines and perform other tasks that put his life at risk with rival gangs. *Id*. at 468. The Tenth Circuit held the prisoner did not have a liberty interest in his classification when state laws and prison regulations do not create a liberty interest to which due process protections apply. Sparks was a Colorado state prisoner, and in Colorado, classification

decisions are within the discretion of the Colorado Department of Corrections and a particular classification does not implicate any liberty interest. *Id*. The court concluded that "[b]ecause [plaintiff] does not have a liberty interest in a particular classification, be it a gang member or within an STG, he cannot maintain an action based on the classification under the Fourteenth Amendment. Therefore, the district court properly dismissed [plaintiff's] claim." *Id*. at 471.

Like Colorado, Oklahoma's "Director of Corrections is vested with broad discretionary powers to manage the prison system." *Twyman v. Crisp*, 584 F.2d 352, 356 (10th Cir. 1978); *see also Albright v. Yates*, No. CIV 18-073-JHP-SPS, 2018 WL 3848810, at *3 (E.D. Okla. Aug. 9, 2018). This includes the ability prescribe rules for the conduct and management of each institution. *Twyman*, 584 F.2d at 356. In *Twyman*, the Tenth Circuit reaffirmed that no liberty interest existed when a prisoner was "summarily reclassified from medium to maximum custody and transferred to the east cellhouse, with considerable restrictions on his movement and other privileges." *Id*. at 355. The reasons given for the reclassification were that Twyman was engaged in "disruptive activities." *Id*. The Tenth Circuit held that "Twyman's transfer to maximum custody . . . [was] completely within the sphere of authority of prison officials and that appellant has no legitimate claim of entitlement to remain in the general prison population." *Id*. at 357

In Vue's case, this general rule prevails, as the factors set forth in *DiMarco* weigh against this Court finding a state-created liberty interest. First, the Court finds there is a penological interest in keeping rival gangs separated to prevent violence. Administrative segregation is a permissible means to achieve this end. As a result, *DiMarco*'s first factor weighs against finding a state-created liberty interest. *Est. of DiMarco*, 473 F.3d at 1342. Second, the complained-of conditions – Vue's classification and subsequent administrative segregation – are not atypical. The Tenth Circuit has found lockdown for 24 hours without human interaction, constant lighting

12

in the cell, lack of visitation, limited access to outside recreation, and limited shower access to be "typical and insignificant in comparison to the ordinary incidents of prison life." *Sperry v. Wildermuth*, No. 21-3009, 2022 WL 946936, at *4 (10th Cir. Mar. 30, 2022) (unpublished); *see also Rezaq*, 677 F.3d at 1014–15. Thus, Vue's conditions are not atypical or significant in comparison to the typical terms of prison confinement, and *DiMarco*'s second factor weighs against finding a state-created liberty interest. *Sperry*, 2022 WL 946936 at *3; *Est. of DiMarco*, 473 F.3d at 1342.

Third, Vue was sentenced to "an indeterminate LIFE sentence." (Dkt. 23 at 18). Vue has not plausibly alleged that administrative segregation has any effect on the duration of his confinement. Thus, *DiMarco*'s third factor weighs against finding a state-created interest. *Est. of DiMarco*, 473 F.3d at 1342. Finally, Vue's administrative segregation lasted a definite time, roughly 14 months. (Dkt. 23 at 15). Thus, the placement was not indefinite, and *DiMarco*'s fourth factor weighs against finding a state-created liberty interest.

Moreover, because a prisoner does not possess a liberty interest in his classification or in remaining in the general population, he likewise is not entitled to any particular process when removed from the general population. *See Templeman*, 16 F.3d at 371. In *Templeman*, a prisoner complained that prison administrators violated several procedural requirements in the process of assigning him to administrative segregation. *Id*. at 370. The prisoner contended he was not provided notice of an initial hearing, not provided notice of the grounds for his administrative segregation, a single officer rather than the required three-member panel conducted his hearing, and his classification officer was not impartial. *Id*. at 370-71. The Tenth Circuit held "[b]ecause [the prisoner] had no liberty interest in remaining in the general population, the Constitution did not require any particular process at all, even if state law did." *Id*. at 371. Thus, to the extent Vue

alleges Defendants did not comply with state law or ODOC policies relative to his classification and placement in administrative segregation, those allegations are not sufficient to support his Fourteenth Amendment claim.

In sum, Vue has not shown that he has been deprived of a state-created liberty interest as to his classification or placement in administrative segregation. It is not the Court's place to instruct prisons or detention facilities on how best to operate. *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981). While it is understandable why Vue would not want to be housed with a gang which he claims to be unaffiliated, his indeterminate life sentence and placement on a handwritten roster with validated Sureños gang members undermines Vue's complaint that his classification was unjustified and that his administrative segregation was unwarranted. "Because no liberty interest existed, the Fourteenth Amendment [does] not require due process." *Sperry v. Wildermuth*, No. 21-3009, 2022 WL 946936, at *4 (10th Cir. Mar. 30, 2022); *Templeman*, 16 F.3d at 371.

As such, Vue's Fourteenth Amendment due process claim is dismissed, as to all Defendants, for failure to state a claim.

### III.  EIGHTH AMENDMENT CLAIM

In his second claim, Vue asserts that Defendants "violated [his] eighth amendment protection for [sic] cruel and unusual treatment because departmental policy does not establish a procedure to challenge 'association' classifications and to have [Vue's] name removed from that particular designation." (Dkt. 23 at 14). "[A]s a result, [Vue's] life was put in danger due to the unwarranted label." *Id*.

To survive a motion to dismiss on an Eighth Amendment claim, a plaintiff must plausibly allege a deprivation that denies "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court has held that "prison officials have a

duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted). However, "[a]fter incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citations omitted; internal quotation marks omitted). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Id*.

As such, an Eighth Amendment claim must satisfy two elements. First, the alleged deprivation must be objectively serious, such that it "lead[s] to deprivations of essential food, medical care, . . . sanitation . . . or other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 347. Second, the prison official must also "have a sufficiently culpable state of mind." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998) (quotations omitted) (setting out the two-part test).

In *Verdecia v. Adams*, 327 F.3d 1171, 1176 (10th Cir. 2003), a prisoner filed a § 1983 claim asserting that certain defendants violated his Eighth Amendment rights by placing him in a cell with two "Latin King" gang members. The prisoner asserted that because he was Cuban, placing him in a cell with gang members of another race presented a "substantial risk of serious harm." *Id*. Moreover, the prisoner claimed the guards "should have been aware that the placement of a Cuban in a cell with two members of the Latin Kings constituted an excessive risk to his safety." *Id*. The Tenth Circuit reversed the denial of the defendants' motion for summary judgment and held "[t]he failure of [the prison guards] to alleviate a potential risk that should have been

perceived, but was not, does not satisfy the deliberate indifference standard of the Eighth Amendment." *Id*. at 1177.

The court rationalized that while it may be negligent to place members of different gangs together, a prisoner must show that the prison guards' conduct is "in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow." *Id*. at 1176. While the prisoner in *Verdecia* presented evidence of a prior, non-gang-related attack and had requested a transfer on the basis of a potential future attack by his cell mates, the Tenth Circuit found "[t]he facts are insufficient to establish deliberate indifference," because the "[plaintiff] does not establish that [the defendants] were subjectively aware that the placement of a Cuban in a cell with two members of the Latin Kings was a risk to his safety." *Id*.

Likewise, Vue alleges that because of Defendants' misclassification of him as a gang member, he was placed in danger, which "manifested itself due to Vue being segregated with members of a different gang and ultimately [being] physically attacked." (Dkt. 23 at 6). As *Verdicia* holds, placing a prisoner with other gang members generally does not violate the Eighth Amendment. Vue's name was listed on a handwritten Sureños gang roster with several validated Sureños. (Dkt. 23 at 10). This undermines any subjective awareness that the placement of Vue in a unit with others of the same affiliation would constitute a risk to his safety.

Moreover, in the single assault Vue cites in his Amended Complaint, prison guards intervened and protected Vue from physical harm. (Dkt. 23 at 6). Thus, the prison guards fulfilled their duty "to protect [Vue] from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (internal citations omitted). Vue admits that during fourteen months in administrative confinement he "did not suffer serious physical injuries, besides pepper spray to the face," which

occurred when the prison guards intervened on Vue's behalf. (Dkt. 23 at 18). As in *Verdecia*, Vue's allegations do not plausibly allege a violation of the Eighth Amendment.

As such, Vue's Eighth Amendment claim is dismissed, as to all Defendants, for failure to state a claim.

## IV. OPPORTUNITY TO AMEND

The Tenth Circuit has counseled that pro se litigants should be given a reasonable opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend the complaint should be granted unless amendment would be futile. *Hall*, 935 F.2d at 1109. In other words, "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Reynoldson*, 907 F.2d at 126.

Applying this standard, the Court will dismiss Vue's Amended Complaint with prejudice. The facts set forth do not state any plausible claims, and this Court finds that any amendment would be futile.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Vue's Amended Complaint (Dkt. 23) is **dismissed** with prejudice.
2. Defendants Dowling and Peruskie's Motion to Dismiss (Dkt. 27) is **granted**.
3. Vue's Motion to Stay (Dkt. 26) is **moot**.

**DATED** this 22nd day of June 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

17